**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MIDWEST RAILCAR CORPORATION, et. al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**STEEL ON STEEL RAILWAYS, LLC, et. al.,**<br><br>**Defendants.** | **Case No. 25-CV-01950-SPM** |

**MEMORANDUM AND ORDER**

**McGLYNN, District Judge:**

Pending before the Court is Defendant Lewis Salvage Shred Services, LLC's, ("Lewis Salvage") Motion to Dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction. (Doc. 39). Having been fully informed of the issues presented, this Court **GRANTS** Lewis Salvage's Motion to Dismiss.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2022, Plaintiff Midwest Railcar Corporation ("MRC") entered into a "Full Service Master Lease Agreement" ("Master Lease") with Lewis Salvage's Co-Defendant Steel on Steel Railways, LLC. (Doc. 38, ¶ 5). On April 29, 2024, Rochester, Iron & Metal, Inc. n/k/a RLCX ("Rochester") executed an Assignment and Assumption Agreement with Steel on Steel Railways, LLC, wherein Rochester agreed to assume all obligations and rights of Steel on Steel Railways, LLC. under the Master Lease. (*Id.*, ¶ 8). On August 14, 2025, Plaintiff MRC received a letter from Lake City Bank informing MRC that Rochester had sold all its assets to Lake City

Bank pursuant to its rights as a secured creditor of Rochester. (*Id.*, ¶ 10). The letter also stated that Lake City Bank then sold the assets to Defendant Lewis Salvage. (*Id.*). Plaintiffs allege that Lewis Salvage agreed to be bound to the terms of the Master Lease due to its purchase of Rochester's assets, which included Rochester's leasehold interest. (*Id.,* ¶ 36).

On September 29, 2025, Plaintiffs commenced this action in the Third Judicial Circuit, Madison County. (*See* Doc. 1, p. 1). The case was removed to federal court on October 22, 2025. (*Id.*). On December 3, 2025, Plaintiffs filed their First Amended Complaint. (Doc. 38). In the Complaint, Plaintiffs allege that Defendant Lewis Salvage owes damages in the amount of $1,532,893.20 plus additional consequential damages, court costs, attorney's fees, and prejudgment interest as provided by Illinois law. (*Id.*, p. 11). Plaintiffs' allegations of damages arise from their claim that Lewis Salvage failed to fulfill its contractual obligations under the Master Lease. (*See id.*, pp. 9–11). Alternatively, Plaintiffs plead that Lewis Salvage received a benefit in the form of the railcars which came at the expense of MRC, and that it would be inequitable for Lewis Salvage to retain that benefit without compensating MRC. (*Id.*, p. 11).

On December 4, 2025, Defendant Lewis Salvage filed the instant Motion to Dismiss for lack of personal jurisdiction. (Doc. 39). Plaintiffs filed their Memorandum in Opposition on January 5, 2026, and Lewis Salvage filed a Reply brief on January 20, 2026. (*See* Docs. 47, 49). Co-Defendants Jason W. Grube, Rochester, and Steel on Steel Railways, LLC filed a separate Motion to Dismiss on December 12, 2025, that is not resolved in this Order. (*See* Doc. 44).

## APPLICABLE LAW AND LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. *See* FED. R. CIV. PROC. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). When a Court rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need establish only a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In deciding whether a plaintiff has met the *prima facie* standard, courts are not limited to the pleadings and may consider affidavits and other written materials. *See Patton v. Fiducial Financial Services, Inc.*, No. 1:05-CV-1481-RLY-WTL, 2006 WL 2540337, at *1 (S.D. Ind. Aug. 31, 2006); *see also Andersen v. Sportmart, Inc.*, 57 F. Supp. 2d 651, 654–55 (N.D. Ind. 1999).

Personal jurisdiction is proper where it comports with both state law and federal constitutional principles of due process. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). The Illinois long-arm statute provides that an Illinois court may exercise jurisdiction on any basis "now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit has noted that there is no "operative difference" between Illinois and federal due process limits on the exercise of personal jurisdiction. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)*; see also Citadel Grp. Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008) (citation omitted) ("no case has yet

emerged where due process was satisfied under the federal constitution but not under the Illinois Constitution").

Personal jurisdiction can be either specific or general depending on the "nature of the defendant's contacts with the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). Personal jurisdiction is proper if the defendant has sufficient minimum contacts with the forum state such that the defendant could "reasonably anticipate being haled into court there," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and "the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Tamburo*, 601 F.3d at 701 (citing *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).

"General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state." *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009) (citation omitted). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701 (citation omitted). "[I]solated or sporadic contacts—such as occasional visits to the forum state—are insufficient for general jurisdiction." *Id.* (citing *Burger King*, 471 U.S. at 475).

"Specific jurisdiction, meanwhile, refers to jurisdiction over a defendant in a suit arising out of or related to defendant's contacts with the forum." *GCIU-Employer*

*Retirement Fund*, 565 F.3d at 1023 (citation modified and citation omitted). The standard requires three elements: first, the defendant must have purposefully directed activities at the forum state or purposefully availed themselves of conducting business there; second, the alleged injury must arise out of or relate to those forum-related activities; and third, exercising personal jurisdiction must be consistent with traditional notions of fair play and substantial justice. *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

"Under the Illinois Constitution's due process guarantee, a court may exercise jurisdiction 'only when it is fair, just and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of defendant's acts which occur in Illinois or which affect interests located in Illinois.'" *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 827 N.E.2d 1031, 1039 (Ill. App. Ct. 1st Dist. 2005) (citing *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990)).

## ANALYSIS

### I. Jurisdictional Waiver

Federal courts generally look to state law to determine the scope of their personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). In Illinois, personal jurisdiction may arise through general jurisdiction, specific jurisdiction, or waiver. *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 182 (Ill. App. Ct. 2014). Waiver occurs when the

agreement giving rise to the dispute contains a forum-selection clause and the defendant is either a party to that agreement or "so closely related to the dispute" that it is bound by the clause despite not being a signatory. *Id.*; *see also Burger King Corp*, 471 U.S. at 472 n.14 (recognizing that, because personal jurisdiction is a waivable right, a litigant may consent to it through various legal arrangements, including a freely negotiated forum-selection clause). Given that forum-selection clauses can confer personal jurisdiction, there is no reason to believe that jurisdictional waiver clauses are invalid.

The primary issue is whether Defendant Lewis Salvage was assigned, or instead fully assumed, the Master Lease originally executed by Plaintiff Midwest Railcar Corporation and Co-Defendants Jason Grube and Steel on Steel Railways, LLC, thereby making Lewis Salvage subject to the jurisdictional waiver contained in the Master Lease. (*See* Doc. 38, Ex. A, p. 10). The waiver in the Master Lease provides that the "Lessee agrees that the state and/or federal courts in the State of Illinois shall have jurisdiction over all matters arising out of this Lease . . . ." (*Id.*). Lewis Salvage makes three arguments in its Motion to Dismiss as to why it did not fully assume the Master Lease and is therefore not subject to the jurisdictional waiver. (*See* Doc. 40).

First, Lewis Salvage argues that Section 19 of the Master Lease precludes any assignment or assumption of the Master Lease to Lewis Salvage. (*Id.*, p. 7). Section 19 states that "Lessee shall not loan or sublet any Car of transfer or assign any of its interests or obligations under this Lease, whether by operation of law or otherwise, without the prior written consent of Lessor . . . ." (Doc. 38, Ex. A, p. 5). Lewis Salvage

argues that, because MRC never agreed to assign obligations under the Master Lease to Lewis Salvage (rather, Lewis Salvage purchased the operating assets of a previous assignee under the Master Lease, Rochester), that any purported assignment of the Master Lease to Lewis Salvage would be unwritten, unapproved, and invalid according to the Master Lease itself. (Doc. 40, p. 7).

Plaintiffs respond that, even if Lewis Salvage did not validly assume the Master Lease, Lewis Salvage's reliance on the Master Lease to dispute its obligations necessarily establishes that this action "arises out of" the Master Lease, thereby triggering the forum-selection clause and conferring jurisdiction in Illinois. (Doc. 47, p. 5). This argument is unpersuasive because it conflates whether a dispute relates to a contract with whether a non-signatory is bound by that contract's provisions. The mere fact that Lewis Salvage references the Master Lease in contesting whether it is bound to the Master Lease does not establish that it agreed to, or is otherwise bound by, the Master Lease's jurisdictional waiver. Rather, the threshold issue remains whether Lewis Salvage can be treated as a party to the Master Lease such that enforcement of the forum-selection clause is appropriate. Lewis Salvage cannot be bound to the Master Lease, at least through assignment, because no assignment conditions have been fulfilled.

Second, Lewis Salvage argues that, because it acquired the assets through an Article 9 sale, only the debtor's interest in the collateral—not its contractual obligations—was transferred. (Doc. 40, p. 7). Article 9 permits a secured creditor to dispose of collateral after default, and such a disposition transfers the debtor's rights in the collateral without automatically transferring its obligations with respect to

that collateral. Ind. Code § 26–1–9.1–610; Ind. Code § 26–1–9.1–617. Accordingly, Lewis Salvage contends that its purchase did not bind it to the Master Lease, and that the jurisdictional waiver contained therein does not apply. (*See* Doc. 40, pp. 7–12).

This argument is persuasive. Successor liability in the Article 9 context generally arises only where the purchaser is not acting in good faith, such as when it is merely a continuation of the prior entity. *Glentel, Inc. v. Wireless Ventures, LLC*, 362 F. Supp. 2d 992, 999–1000 (N.D. Ind. 2005). Here, Lewis Salvage is an independent purchaser that acquired assets from Lake City Bank following Rochester's default, and there is no indication that it is a mere successor of Rochester or otherwise closely connected to the Master Lease. This Court is therefore satisfied that Lewis Salvage qualifies as a good-faith purchaser under Article 9. Although it acquired the debtor's interest in the collateral, it did not, without more, assume the debtor's contractual obligations under the separate Master Lease agreement.

Plaintiffs argue, despite the Article 9 sale, that Lewis Salvage expressly bound itself to the jurisdictional waiver found in the Master Lease when it executed its Secured Creditor Asset Sale and Purchase Agreement with Lake City Bank. (*See* Doc. 47, p. 4 (citing Doc. 31, Ex. A-1)). They argue that the contract states that Lewis Salvage buys "All Contract Rights and other General Intangibles of the Borrower, [Rochester Metal]." (Doc. 47, p. 4). Lewis Salvage correctly points out, however, that this paragraph goes on to exclude "Contract Rights and General Intangibles arising from any lease obligations due and owing from Rochester Auto LLC." (Doc. 31, Ex. A, ¶ 4; Doc. 49, p. 2). Lewis Salvage's Purchase Agreement shows that it did not intend

to be bound to the terms of the Master Lease. A jurisdictional waiver reasonably falls under the definition of "lease obligation." Therefore, this Court is satisfied that Lewis Salvage did not subject itself to the jurisdictional waiver through its purchase from Lake City Bank.

Third, Lewis Salvage points out Plaintiffs' own exhibit to the First Amended Complaint states that the assets were sold by Lake City Bank to a new buyer "free and clear of liens, claims, and encumbrances." (Doc. 41, Ex. E). Lewis Salvage argues that when a corporation sells its assets to another corporation, the liabilities do not become a part of the successor corporation. (Doc. 40, p. 8 (citing *Sinquefeld v. Sears Roebuck & Co.*, 568 N.E.2d 325, 327 (1991))). Although this Court makes no comment on the applicability of this assertion, this exhibit adds some additional weight to the claim that Lewis Salvage did not bind itself to the entirety of the Master Lease with its purchase. In consideration of the foregoing, this Court is satisfied that Lewis Salvage did not assume the Master Lease and cannot be bound to the jurisdictional waiver under that argument.

Illinois law, however, does not require a party to have assumed or been assigned a contract to be bound by a forum selection clause. As the Court noted above, *Solargenix* states that waiver is also triggered when the defendant is "so closely related to the dispute" that it is bound by the clause despite not being a signatory. 17 N.E.3d at 182. In *Solargenix*, which Plaintiffs rely upon, the Court had to decide whether it could exercise personal jurisdiction over Spanish companies whose American subsidiaries agreed to a joint venture that contained a forum selection provision fixing venue in Chicago. *Id.* at 177. The Court decided that it could. *Id.* The

evidence showed that the Spanish companies had been "heavily involved in negotiating and approving the joint venture agreements." *Id.* at 182. The Court reasoned that this involvement showed the Spanish companies' close relation to the dispute and made it foreseeable that any dispute arising from the joint venture would reasonably result in binding them to the agreement's forum selection clause.

The Seventh Circuit applied the same "closely related" framework in *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). In *Hugel*, a company, its subsidiary, and their common president and chairman brought suit against Lloyd's in the Northern District of Illinois arising out of a business dispute. *Id.* at 207. Lloyd's sought to enforce a forum-selection clause designating England as the exclusive forum, which the plaintiffs argued applied only to Hugel as the signatory. *Id*. The Court held that the non-signatory entities were nonetheless bound because they were so closely related to the dispute involving Hugel and Lloyd's that enforcement of the forum-selection clause was foreseeable. *Id.* at 209–10. Hugel served as president and chairman of both companies and owned 99 percent of the parent company, which in turn wholly owned the subsidiary. *Id.* Hugel's dominant ownership and control over both entities effectively rendered the parties indistinguishable for purposes of the clause.

It is clear from these cases that *Solargenix's* "closely related" test does not bind Lewis Salvage to the terms of the Master Lease. As seen in the precedent, the framework applies in cases where there is substantial relatedness to the original contract, either by being party to its drafting or by having some other form of relationship to the parties, such as the control seen in *Hugel*. Here, Lewis Salvage is

a third-party who purchased assets from a bank which were sold after one of the primary parties to the contract was having financial difficulties. Lewis Salvage had no significant relationship with the parties prior to this purchase and thus cannot be bound to the terms of the Master Lease on that theory.

Finally, Plaintiffs argue that Lewis Salvage's inadvertent use of the railcars that occurred on August 11 and August 13 is sufficient to bind Lewis Salvage to the dispute resolution terms of the Master Lease. (Doc. 47, Ex. A, p. 12; Doc. 47, pp. 6–8). They cite *Solargenix* in support of the assertion that "[f]orum selection clauses have been held to apply not merely to contract claims involving the terms of the contract in which the clause appears, but also to other claims that are otherwise connected to the contract, such as tort claims arising from the contract." (Doc. 47, p. 7 (citing *Solargenix,* 17 N.E.3d at 182)). This characterization, however, is incorrect. The Seventh Circuit wrote in *Hugel* that "where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation]." 999 F.2d at 209 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir. 1983). This standard first requires that the parties be in contractual privity. Here, as Lewis Salvage is not an assignee under the Master Lease, Lewis Salvage is not in contractual privity with the Plaintiffs. Therefore, alternative theories of liability beyond contractual disputes will not trigger the forum selection clause.

In conclusion, the Court is satisfied that Lewis Salvage is not bound by the jurisdictional waiver clause, and that personal jurisdiction cannot be established over Lewis Salvage on a theory of waiver.

## II. Specific Jurisdiction

Next, the Court considers whether personal jurisdiction can be established on a theory of specific jurisdiction. Specific jurisdiction exists where a defendant has purposefully directed activities at the forum state, the alleged injury arises out of those activities, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Rogers*, 996 F.3d at 819. The inquiry focuses on the relationship between the defendant, the forum, and the litigation. *Advanced Tactical Ordnance*, 751 F.3d at 801. Plaintiffs allege that specific jurisdiction can be found either through Lewis Salvage's purchase of the assets or through Lewis Salvage's inadvertent use of the railcars. (Doc 47, pp. 4–8).

### a. The Article 9 Sale

The first prong of specific jurisdiction requires the Court to consider whether the defendant purposefully directed activities at the forum state. As noted by the Seventh Circuit, a defendant cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *NBA Properties, Inc., v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (citing *Burger King,* 471 U.S. at 475). This requirement ensures that jurisdiction rests on meaningful, forum-directed conduct rather than mere happenstance. *Burger King*, 471 U.S. at 475. Accordingly, courts ask whether the defendant deliberately engaged in significant activities within the forum state or

created continuing obligations with residents of the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950).

Lewis Salvage did not purposefully direct conduct toward the forum state. The Article 9 sale was an out-of-state discrete transfer of the debtor's interest in collateral, not conduct purposefully directed at Illinois. As has already been established, Lewis Salvage is not bound to the Master Lease or Rochester's obligations under the Master Lease. There is no indication that Lewis Salvage created ongoing obligations with Illinois, continued performance under the Master Lease, or otherwise availed itself of the privilege of conducting business in the forum. Rather, Plaintiff's claims arise from a preexisting contractual relationship to which Lewis Salvage was not a party. Absent additional forum-directed conduct, the mere acquisition of assets does not satisfy the purposeful availment requirement necessary to support specific jurisdiction.

In further support of this conclusion, the Court considers the relevant case law on whether assignees automatically take the place of assignors for purposes of personal jurisdiction. Although it is generally true that corporate successors can have personal jurisdiction established over them for the activities of their predecessors, the same cannot be said of assignee/assignor relationships. *See Purdue Rsrch. Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 784 (7th Cir. 2003). Courts tend to find that jurisdiction is not automatically found for assignees where it would be found for their assignors. *See Lobatto v. Berney,* No. 98 CIV 1984 SWK, 1999 WL 672994, at *8 (S.D.N.Y. Aug. 26, 1999) ("Jurisdiction over an assignee must be based on the assignee's own acts and does not arise solely because the assignor may be subject to

personal jurisdiction."); *see also Russellville Steel Co., Inc. v. Sears, Roebuck & Co.*, No. 99 C 485, 2000 WL 91680, at *3 (N.D. Ill. Jan.19, 2000). Courts have relied on two principles in making this determination. First, "[each] defendant's contacts with the forum state must be assessed individually." *Rogers v. 5–Star Mgmt., Inc.,* 946 F.Supp. 907, 913 (D.N.M. 1996) (quoting *Calder v. Jones,* 465 U.S. 783, 790 (1984)). Second, the unilateral actions of other parties cannot establish the requisite forum contacts; rather, the contacts must arise from the non-resident defendant's own conduct. *Id.* (quoting *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65, 74 (D.R.I. 1995)).

The Court has already established that Lewis Salvage is not an assignee to the Master Lease. But even if it were, that would not be dispositive of a finding of specific jurisdiction. Following the same analysis conducted by those courts, only the specific actions taken by Lewis Salvage are relevant. Accordingly, Lewis Salvage's purchase of assets from Lake City Bank, an Indiana Bank, does not qualify as activity purposefully directed at Illinois, particularly given that Lewis Salvage specifically disclaimed obligations under the contract. *See Tamburo,* 601 F.3d at 702 ("Personal jurisdiction in breach-of-contract actions often turns on whether the defendant 'purposefully availed' himself of the privilege of conducting business or *engaging in a transaction* in the forum state") (emphasis added). It is irrelevant to the analysis whether the assets originated in Illinois. The Master Lease obligations, and any activity performed by Rochester or the other co-Defendants likewise carry no weight.

The Court is satisfied that Lewis Salvage's purchase did not constitute purposeful availment toward the state of Illinois. Therefore, the first prong of the

specific jurisdiction analysis is not satisfied, and the Court does not reach the second and third prong on the issue of the Article 9 sale.

**b. The Use of Railcars**

Alternatively, Plaintiffs argue that the aforementioned use of the railcars renders Lewis Salvage likely guilty of the intentional tort of conversion, and that conversion of an Illinois company's chattel "clearly meets the definition of purposeful availment." (Doc. 47, p. 8). They argue that Lewis Salvage is then an "intentional actor that took actions that knowingly or negligently harmed an Illinois company." (*Id.* (citing *Burger King*, 471 U.S. at 475)). In Plaintiffs' view, Lewis Salvage can reasonably be expected to be subject to Illinois jurisdiction for this action. (*Id.*). Lewis Salvage counters, asserting that because the use of the railcars occurred in Indiana rather than Illinois, Illinois' jurisdiction enabling statute does not apply because jurisdiction is valid only when an asset is "present within this State when ownership, possession or control was acquired." (Doc. 49, p. 4 (citing 735 ILCS 5/2-209(a)(10); *Schoeps v. Sompo Holdings, Inc.,* 160 F.4th 815, 830 (7th Cir. 2015) ("The place of injury for unjust enrichment is the place where the plaintiffs allegedly conferred the benefit on the defendant."))). Although Lewis Salvage's argument is persuasive, a deeper analysis of the case law regarding personal jurisdiction and intentional torts is necessary.

Specific jurisdiction for intentional torts is slightly different than for breach-of-contract actions. When a plaintiff's claim is centered on an intentional tort, "the inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state." *Tamburo,* 601 F.3d at 702. The Supreme Court in *Calder*,

465 U.S. 783, gave guidance to what constitutes purposeful direction in suits involving intentional torts. *Calder* gave particular weight to the "effects" felt by a plaintiff of a foreign defendant's conduct. *Id*. at 789–90. This created the general rule that the state in which the injury of an alleged tort occurred is the state in which the defendant should be amenable to suit. *See CMG Worldwide, Inc. v. Milton H. Greene Archives, LLC*, No. 1:05-CV-0415-RLY-TAB, 2005 WL 2175523, at *3 (S.D. Ind. Sept 6, 2005); *Greene v. Mizuho Bank, Ltd.*, F. Supp. 3d 1362, 1383 (N.D. Ill. 2016) (citing *Abad v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009) ("the place where the tort occurred is where the injury occurred . . . rather than where the conduct . . . that caused the injury occurred; for there is no tort without an injury.")). The analysis, however, is more complex. As described by the Seventh Circuit, there are three requirements for establishing jurisdiction under *Calder* via an intentional tort: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo,* 601 F.3d at 703.

Circuit courts have two different general interpretations of *Calder*. On one hand, some circuits have read the requirement broadly, requiring only conduct that is "targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000). Others have taken a narrower approach, arguing that conduct must be "intentionally targeted and focused on" the forum state. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir. 1997). The former approach favors

Plaintiffs in this case, and the latter favors Lewis Salvage. The Seventh Circuit has, by its own admission, some tension regarding its own interpretation of *Calder*. *See Tamburo,* 601 F.3d at 704 ("Our circuit hasn't firmly settled on either of these understandings of *Calder's* 'express aiming' requirement.").

In *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), the Seventh Circuit took a narrower approach. In that case, the Court considered whether Indiana could exercise jurisdiction over California defendants accused of malicious prosecution where all allegedly tortious conduct occurred in California. *Id.* at 395. The Court held that jurisdiction in Indiana was improper, emphasizing that the defendants had not engaged in any conduct creating a substantial connection with Indiana itself. *Id.* Rather than focusing solely on the plaintiff's injury, the Court looked to whether the defendants' actions were directed at the forum state, concluding that *Calder* did not eliminate the requirement that the defendant's conduct establish a meaningful link to the forum. Under this standard, Lewis Salvage's use of the railcars in Indiana which were purchased in Indiana certainly would not confer personal jurisdiction.

By contrast, the Seventh Circuit also recognized circumstances in which jurisdiction is proper based on the location of the injury when the defendant's conduct is expressly aimed at the forum. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997); *see also Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship,* 34 F.3d 410, 412 (7th Cir. 1994). In *Janmark*, a California company threatened a customer of an Illinois competitor to disrupt that competitor's sales. 132 F.3d at 1202. The court held that Illinois could exercise jurisdiction, reasoning that the defendant's actions were purposefully directed at an Illinois company and that the resulting

injury occurred in Illinois. *Id.* at 1203. In that context, the court explained that inducing customers to cease doing business with an Illinois firm could constitute a tort in Illinois, making jurisdiction appropriate where the defendant's conduct was expressly aimed at the forum and caused injury there.

The Court reconciled these differing approaches somewhat in *Tamburo.* In doing so, it justified the decision in *Janmark* as "ultimately focusing on more than the fact that the injury had occurred in Illinois." *Tamburo,* 601 F.3d at 706. The Court further wrote that "*Janmark's* jurisdictional conclusion was premised on the Illinois-based injury *and* the fact that the defendant acted with the purpose of interfering with sales originating in Illinois. Thus, despite its broad language about *Calder, Janmark* ultimately considered the relationship between the allegedly tortious conduct and the forum state itself." *Id.* Later, in *Advanced Tactical Ordnance Systems*, the Court reaffirmed the viewpoint that, despite the previous tension in its cases, "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" 751 F.3d at 802 (quoting *Walden*, 571 U.S. at 284). "Any decision that implies otherwise can no longer be considered authoritative." *Id.*

Following this precedent, Lewis Salvage's actions do not grant the Plaintiffs jurisdiction in this suit. Although Plaintiffs are located in Illinois, Lewis Salvage's alleged action does not reasonably tie it to Illinois. As the Seventh Circuit describes, there must be an "entry" by the defendant into the forum state. *Tamburo,* 601 F.3d at 706. In *Tamburo,* the "entry" that led to the establishment of jurisdiction was the

fact that the defendants had used "public websites to defame an Illinois-based businessman and exhort readers to boycott his products." *Id.*

Here, Lewis Salvage has not made a comparable "entry" into Illinois. The alleged tort arises from Lewis Salvage's use of the railcars in Indiana on August 11 and 13, 2025, following its purchase of assets from Lake City Bank, an Indiana entity. (Doc. 47, pp. 8, 12). Plaintiffs contend that, if Lewis Salvage is not bound by the Master Lease, such use constitutes an intentional tort. (*Id.*, p. 8). But the assets were not acquired from Plaintiffs or the co-defendants, and there is no indication that Lewis Salvage's conduct was purposefully directed toward Illinois. As Lewis Salvage notes, it "did nothing more than purchase assets in an Article 9 sale in Indiana from an Indiana bank that involved assets of another Indiana company (Rochester)." (Doc. 40, p. 10). Indeed, Lewis Salvage's Purchase Agreement with Lake City Bank provides: "Seller agrees to sell, and Buyer agrees to purchase, the assets of Rochester Iron & Metal Incorporated, an Indiana for-profit corporation (the 'Borrower'), and R.I.M. Trucking LLC, an Indiana limited liability company ('R.I.M. Trucking'), described in Exhibit A attached hereto and made a part hereof . . . ." (Doc. 31, Ex. A-1, p. 1). The agreement contains no reference to Illinois or to Plaintiffs, further underscoring the absence of any forum-directed conduct. The mere fact that a plaintiff suffers economic injury in the forum state, without additional forum-directed conduct by the defendant, is insufficient to establish specific jurisdiction. The Court is therefore satisfied that personal jurisdiction cannot be established on this basis.

## III. General Jurisdiction

Having concluded that Lewis Salvage's contacts with Illinois are insufficient to establish specific jurisdiction, this Court will also briefly consider the question of general jurisdiction.

Unlike specific jurisdiction, general jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation. *See Logan Prods., Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir. 1996). The minimum level of contact to establish general jurisdiction, however, is significantly higher than specific jurisdiction. *See ESAB Group,* 126 F.3d at 623. General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). "[G]eneral jurisdiction exists only when the organization is essentially at home in the forum State." *Kipp v. Ski Enter Corp, of Wisconsin*, 783 F.3d 695, 697–98 (7th Cir. 2015).

Lewis Salvage is an Indiana LLC. (Doc. 40, p. 5). Its principal place of business is in Indiana, and its sole member resides in Indiana. (*Id.)* Lewis Salvage "owns no real estate in Illinois, has no bank accounts in Illinois, and does not conduct business in Illinois." *(Id.*, p. 6). Plaintiffs do not meaningfully dispute these facts in their response to Lewis Salvage's Motion to Dismiss. (Doc. 47). Therefore, the Court is satisfied that general jurisdiction cannot be established over Lewis Salvage.

## IV. Jurisdictional Discovery

Finally, Plaintiffs ask that, in lieu of dismissal, this Court should order a period of jurisdictional discovery as well as an evidentiary hearing to determine the

extent of Lewis Salvage's contacts with Illinois. (Doc. 47, pp. 8–9). Plaintiffs argue that jurisdictional discovery is appropriate if "the plaintiff has established a colorable or prima facie showing of personal jurisdiction." *(Id.*, p. 9 (citing *Cent States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir. 2000); *Kuklinski v. Binance Cap. Mgmt Co.*, No. 3:21-CV-01425-SPM, 2022 WL 3018427, at *2 (S.D. Ill. July 29, 2022) (granting jurisdictional discovery in response to a motion to dismiss)). The Plaintiffs request a limited discovery window to ascertain the circumstances surrounding the purchase of the Rochester assets, the circumstances surrounding Lewis Salvage's use of the railcars, and the extent of Lewis Salvage's contacts with Illinois for the purpose of establishing general jurisdiction. (Doc. 47, pp. 9–10).

Jurisdictional discovery would not be appropriate here. Courts require a *prima facie* showing of personal jurisdiction before granting additional discovery. *See Cent States*, *Se. & Sw. Areas Pension Fund*, 230 F.3d at 946 (citing *Ellis v. Fortune Seas, Ltd*, 175 F.R.D. 308, 312 (S.D. Ind. 1997)) ("[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."); *Thomas v. Granite Nursing and Rehab. Ctr., LLC*, No. 3:13-CV-1320-JPG-DGW, 2014 WL 2535254, at *4 (S.D. Ill. June 5, 2014). Plaintiffs have not made any *prima facie* showing here. Furthermore, even if the Plaintiffs had established a *prima facie* showing, this Court would not grant jurisdictional discovery because the specific discovery Plaintiffs request would not change the personal jurisdiction analysis. *See Cent States, Se. & Sw. Areas Pension Fund*, 230 F.3d at 947 (denying jurisdictional discovery and pointing out that the party's requests were

unlikely to aid in establishing jurisdiction). Plaintiff argues that discovering that Lewis Salvage reviewed the Master Lease before purchase would be "evidence that Lewis Salvage made a knowing decision to be bound by the Lease's terms." (Doc. 47, p. 10). But neither that information nor further inquiry around the use of the railcars would change the jurisdiction analysis. *Id.*

Furthermore, an inquiry into the nature of Lewis Salvage's contacts with Illinois for the purposes of general jurisdiction is also improper. As Lewis Salvage points out, it has submitted sworn testimony that is has no assets in Illinois, no bank accounts in Illinois, owns no real estate in Illinois, and does no business in Illinois. (Doc. 49, p. 5; Doc. 41, p. 1). Where defendants submit evidence opposing the district court's exercise of personal jurisdiction, plaintiffs must similarly submit affirmative evidence in support of personal jurisdiction that establishes at least a *prima facie* case. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). In this case, Plaintiffs' sole basis for seeking further discovery into Lewis Salvage's contacts is the assertion that Lewis Salvage's facility is located in northern Indiana, "less than a hundred miles from Chicago." (Doc. 47, p. 9). This is too speculative to warrant additional discovery. "[A] district court does not abuse its discretion in denying additional discovery where the request was based on nothing more than mere speculation and would amount to a fishing expedition." *In re Sheehan*, 48 F.4th 513, 527 (7th Cir. 2022) (quoting *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018)). "Nor is a plaintiff entitled to discovery to establish essentially speculative allegations necessary to personal jurisdiction." *Id.* (citing *Viahart L.L.C. v. Partnerships & Unincorporated Ass'ns Identified on*

*Schedule "A"*, No. 1:19-CV-8181, 2022 WL 1004412, at *3 (N.D. Ill. Apr. 4, 2022)). Therefore, the Court denies Plaintiffs' request for jurisdictional discovery and an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, Defendant Lewis Salvage's Motion to Dismiss Pursuant to Rule 12(b)(2) (Doc. 39) is **GRANTED**. Defendant Lewis Salvage is **TERMINATED** from this action.

**IT IS SO ORDERED.**

**DATED: September 2, 2026**

**STEPHEN P. McGLYNN**
**U.S. District Judge**