**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MIDWEST RAILCAR CORPORATION, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**STEEL ON STEEL RAILWAYS, LLC, et al.,**<br><br>**Defendants.** | **Case No. 25-CV-01950-SPM** |

**MEMORANDUM AND ORDER**

**McGLYNN, District Judge:**

Pending before the Court is Defendants Steel on Steel Railways, LLC ("Steel on Steel"), Rochester Iron & Metal, LLC ("Rochester"), and Jason W. Grube's Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 44). Having been fully advised of the issues presented, this Court **GRANTS** Defendants' Motion to Dismiss.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On August 18, 2022, Plaintiff Midwest Railcar Corporation ("MRC") entered into a "Full Service Master Lease Agreement" ("Master Lease") with Defendant Steel on Steel. (Doc. 38, ¶ 5).Under the Master Lease, MRC agreed to lease 30 railcars to Steel on Steel, an Indiana limited liability company. (*Id.*, ¶ 7). On August 18, 2022, Defendant Rochester signed a corporate guaranty in which Rochester agreed to pay MRC all rents and other sums due in the Master Lease. (*Id.*, ¶ 6). Defendant Jason Grube signed the corporate guaranty as a member of Rochester. (*Id.*). On April 29, 2024, Rochester executed an Assignment and Assumption Agreement with Steel on

Steel, wherein Rochester agreed to assume all obligations and rights of Steel on Steel under the Master Lease. (*Id.*, ¶ 8). Defendant Grube signed the Assignment and Assumption Agreement as both a member of Rochester and Steel on Steel. (*Id.*) In the summer of 2025, Rochester experienced financial difficulties and was forced to surrender its operating assets to Lake City Bank. (*Id.*, Ex. E). On August 14, 2025, Plaintiff MRC received a letter from Lake City Bank informing MRC that Rochester had sold all its assets to Lake City Bank pursuant to its rights as a secured creditor of Rochester. (*Id.* ¶ 10).

On September 29, 2025, Plaintiffs commenced this action in the Third Judicial Circuit, Madison County. (*See* Doc. 1, p. 1). The case was removed to federal court on October 22, 2025. (*Id.*). On December 3, 2025, Plaintiffs filed their First Amended Complaint. (Doc. 38). In the Complaint, Plaintiffs allege that Defendants owe Plaintiffs damages in the amount of $1,532,893.20 plus additional consequential damages, court costs, attorney's fees, and prejudgment interest as provided by Illinois law. (*Id.*, p. 11). Plaintiffs' damages allegations arise from Rochester's alleged failure to perform its obligations under the Master Lease, including its failure to pay amounts due to MRC. (*See id.*, pp. 4–5). Plaintiffs further allege that Steel on Steel, Rochester, and Grube represented to MRC that Steel on Steel was not in default under the Master Lease; that MRC reasonably relied on that representation in executing the April 29 Assignment and Assumption Agreement; and that MRC suffered damages as a direct and proximate result of its reliance. (*Id.*, p. 7).

On December 12, 2025, Defendants Steel on Steel, Rochester, and Grube filed the instant Motion to Dismiss, arguing that the Court lacks personal jurisdiction over

Grube and that Plaintiffs failed to adequately plead Counts II and V under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (*See* Doc. 45). Plaintiffs filed their Opposition on January 12, 2026, and Defendants Steel on Steel, Rochester, and Grube filed their Reply on January 27, 2026. (*See* Docs. 48, 52). Defendant Lewis Salvage Shred Services, LLC filed a separate Motion to Dismiss on December 4, 2025, that is not resolved in this Order. (*See* Doc. 39).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[,] . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all

possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. *See* FED. R. CIV. PRO. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). When a Court rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need establish only a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In deciding whether a plaintiff has met the *prima facie* standard, courts are not limited to the pleadings and may consider affidavits and other written materials. *See Patton v. Fiducial Financial Services, Inc.*, No. 1:05-cv-1481-RLY-WTL, 2006 WL 2540337, at *1 (S.D. Ind. Aug. 31, 2006). *See also Andersen v. Sportmart, Inc.*, 57 F. Supp.2d 651, 654–55 (N.D. Ind. 1999).

Personal jurisdiction is proper where it comports with both state law and federal constitutional principles of due process. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). The Illinois long-arm statute provides that an Illinois court may exercise jurisdiction on any basis "now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit has noted that there is no "operative difference" between Illinois and federal due process limits on the exercise of personal jurisdiction. *Mobile*

*Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see also Citadel Grp. Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008) (citation omitted) ( "no case has yet emerged where due process was satisfied under the federal constitution but not under the Illinois Constitution"). "Under the Illinois Constitution's due process guarantee, a court may exercise jurisdiction 'only when it is fair, just and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of defendant's acts which occur in Illinois or which affect interests located in Illinois.'" *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 827 N.E.2d 1031, 1039 (Ill. App. Ct. 2005) (citing *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990)).

## ANALYSIS

### I. Personal Jurisdiction over Defendant Jason Grube

Plaintiffs' primary basis for asserting personal jurisdiction over Defendant Jason Grube is that Grube subjected himself to jurisdiction in Illinois when he signed the Master Lease, which contained a jurisdictional waiver. (Doc. 48, pp. 1–2, 4). Alternatively, Plaintiffs argue that jurisdiction over Grube can be established on an alter-ego theory of jurisdiction. (*Id.*, pp. 6–7).

#### a. Jurisdictional Waiver

The jurisdictional waiver in the Master Lease provides that "Lessee agrees that the state and federal courts in the State of Illinois shall have exclusive jurisdiction over all matters arising out of this Master Lease . . . ." There is no question that the jurisdictional waiver is valid. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); (Doc. 48, p. 4). There is, however, a question as to

whether the waiver applies to Grube in his personal capacity because he signed the Master Lease on behalf of Steel on Steel. (*See* Doc. 38, p. 34). Plaintiffs argue that it does. (Doc. 48, pp. 4–5). Although Defendants cite applicable caselaw supporting the argument that corporate representatives are not personally bound to agreements that they sign, (*see* Doc. 45, pp. 7–9), Plaintiffs counter with the argument that Grube is bound to the waiver because he is "not merely signing a corporate document, [but he] is deeply involved in the negotiations of multiple defendants and deeply intertwined with the facts of this case," (Doc. 48, p. 4). It is true that corporate representatives are not personally bound by forum selection clauses and that Grube signed the Master Lease in his capacity as member of Steel on Steel. *See Monco v. Zoltek Corp.*, No. 1:17-CV-06882 2019 WL 952138, at *15 (N.D. Ill. Feb. 27, 2019); (Doc. 38, Ex. A, p. 10). Plaintiffs allege, however, that it is not Grube's signature that binds him, but his affiliation with the other parties in the suit. (Doc. 48).

Plaintiffs cite established precedent stating that "A nonparty will be bound by a forum selection clause if the nonparty is closely related to the dispute such that it becomes foreseeable that the nonparty will be bound." (*Id.* (citing *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1022 (7th Cir. 2024))). Under the closely related parties test, "[w]here there is a sufficiently close relationship between the non-signatory and the dispute and the parties, it does not defy the non-signatory's reasonable expectations that it would be bound." *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 182 (2014).

The question is whether Grube is so closely related to the dispute that he can be personally bound by the jurisdictional waiver found in the Master Lease. In *Adams*

*v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012), the Seventh Circuit provided guidance for the closely related test. The Court broke the test into two "reasonably precise principles," namely "affiliation" and "mutuality." *Id.* at 439. Affiliation is when a forum selection clause is enforced by or against a company that is under common ownership (such as a parent and its subsidiary) with a party to the contract. *Id.* at 440–41; *see also American Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.,* 364 F.3d 884, 888–89 (7th Cir. 2004). Mutuality refers to non-signatories to a contract choosing to hold plaintiffs to a forum-selection clause when those plaintiffs could have held defendants to the clause on the principal of affiliation. *Adams*, 702 F.3d at 443. Further, in *Coatney*, 93 F.4th at 1023, the Seventh Circuit identified two situations where closely related parties test was met. The first was *Solargenix,* where a jurisdictional waiver was found valid because two Spanish companies, as parents of American subsidiaries, were found to be "heavily involved in negotiating and approving the joint venture agreements." *Id.* (citing *Solargenix*, 17 N.E.3d at 182.) The second was *Hugel*, where a jurisdictional waiver was found validly applied to two companies because those two companies were under the full ownership and control of the signatory, despite the companies themselves not being signatories on the agreement. *Id.* (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209–10 (1993)).

The present case is distinguishable from *Solargenix*. There, the parent corporations were found to be closely related to the dispute because one had consented to be bound to the joint venture agreement in a separate agreement and the other had conducted due diligence on and approved the joint venture agreement.

*Solargenix*, 17 N.E.3d at 177, 186–89. Here, Grube submitted an unrebutted declaration stating that he "did not personally negotiate the Master Lease, Corporate Guaranty, and/or Assignment Agreement." (Doc. 45, Ex. A, p. 2). Plaintiffs have neither alleged nor submitted evidence demonstrating that Grube was involved in negotiating the Master Lease. Plaintiffs offer only the conclusory assertion that Grube was "deeply involved in the negotiations" without identifying any factual allegations or evidence supporting that claim. *See Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 884 (N.D. Ill. 2020) ("If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true" for purposes of a Rule 12(b)(2) motion.). Accordingly, *Solargenix* does not support the exercise of personal jurisdiction over Grube based on the closely related parties doctrine.

*Hugel* is likewise distinguishable. There, the Seventh Circuit concluded that two non-signatory corporations were bound by a forum-selection clause because they were wholly owned and controlled by the signatory, rendering them sufficiently affiliated with both the agreement and the dispute. *Hugel*, 999 F.2d at 209–10. *Hugel* exemplifies the "affiliation" principle, under which a forum-selection clause may be enforced against a non-signatory entity under common ownership with a signatory. *Adams*, 702 F.3d at 440–41. Unlike the corporate entities in *Hugel*, Grube is an individual who executed the Master Lease solely in his representative capacity on behalf of Steel on Steel. Accordingly, *Hugel* does not support extending the Master Lease's jurisdictional waiver to Grube in his personal capacity.

Further, *Hugel* underscores a distinguishing factor between the present case and the "closely related" caselaw. Plaintiffs are arguing that personal jurisdiction can

be found over Grube, an *individual,* using a theory of jurisdiction that is generally applied to closely related *entities*. In *Monco,* the Northern District of Illinois, applying the Seventh Circuit's concept of affiliation, wrote that "[t]here can be no allegation that this concept allows jurisdiction here; Rumy is an officer, not a subsidiary, of Zoltek." 2019 WL 952138, at *16. The same holds true here. Grube is not a corporate affiliate of Steel on Steel or Rochester; he is a member. Judge Posner wrote in *Adams*, "there has to be a reason, rather than the mere fact of affiliation, for a nonparty to a contract to be able to invoke, or to be bound by, a clause in it." *Adams,* 702 F.3d at 440. Were this Court to bind Grube to the jurisdictional waiver found in the Master Lease based on these facts, then every officer of every corporation would be bound in similar circumstances. As the Northern District of Illinois wrote in *Guaranteed Rate, Inc. v. Conn*, there are "serious concerns over whether it would be 'reasonable and just'" under *Burger King Corp.*, 471 U.S. at 473 n.14, "to apply a 'close relationship' test relying on 'foreseeability' to find implied consent to personal jurisdiction." 264 F. Supp. 3d 909, 927 (N.D. Ill. 2017).

Finally, Plaintiffs argue that Grube signed multiple agreements on behalf of both Steel on Steel and Rochester, rather than a single corporate document. (Doc. 48, p. 6). These actions by Grube do not tie him to the underlying dispute any more than if he had only signed the Master Lease itself, at least as it pertains to the "closely related" test. Accordingly, personal jurisdiction cannot be established over Grube on this basis.

**b. Alter-ego Theory**

Courts may enforce waivers in corporate contracts against individuals when the individual is an alter ego of the corporation and will pierce the corporate veil to the hold the individual liable. *See Kaeser & Blair, Inc. v. Willens,* 845 F. Supp. 1228, 1234 (N.D. Ill. 1993). To invoke veil piercing, the plaintiff must show "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist . . . and the circumstances [are] such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id.* (quoting *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir. 1985). Courts are generally reluctant to pierce the corporate veil. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). A party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a "dummy or sham" for another person or entity. *Id.* (citing *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996)). In Illinois, the following factors are used when determining whether there is sufficient "unity of interest" to justify disregarding the corporate form:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders. *Id.*

*Id.* (citing *Fontana v. TLD Builders Inc.,* 840 N.E.2d 767, 778 (Ill. App. Ct. 2005)). Plaintiffs allege in their Response to Defendants' Motion to Dismiss that Grube is

bound under an alter-ego theory of jurisdiction because Grube intentionally or negligently failed to disclose material information that he was aware of, made representations that his companies were not in default, induced plaintiffs to sign a contract which he knew was false, and did so by "hiding behind constant shells and entities." (Doc. 48, p. 7). As Defendants point out, Plaintiffs do not identify any factual allegations supporting this theory. (Doc. 52, p. 3). But more importantly, these allegations do not support a theory of veil piercing as they do not meaningfully speak to any of the factors referenced above. Additionally, Grube made a sworn declaration which indicates that himself, Rochester, and Steel on Steel have not commingled funds or assets and that both companies follow necessary corporate formalities. The standard for veil piercing is high. *See Monco*, 2019 WL 952138, at *16. In this case, the record does not support the possibility of veil piercing. Accordingly, the jurisdictional waiver may not be applied against Grube.

**c. Jurisdictional Discovery**

The Court denies Plaintiffs' request for jurisdictional discovery. Jurisdictional discovery is not warranted here. Before a plaintiff is entitled to jurisdictional discovery, the plaintiff must first make a colorable or prima facie showing that personal jurisdiction exists. *See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (citing *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997)) ("[A]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."); *Thomas v. Granite Nursing & Rehab. Ctr., LLC*, No. 13-cv-1320-JPG-DGW, 2014 WL 2535254, at *4 (S.D. Ill. June 5, 2014). As discussed above,

Plaintiffs have failed to make such a showing. Plaintiffs acknowledge that Grube is an Indiana resident and do not allege that Grube personally negotiated the agreements in Illinois, traveled to Illinois in connection with the transactions at issue, or otherwise purposefully directed conduct toward Illinois sufficient to establish specific personal jurisdiction. (Doc. 38, ¶ 21; Doc. 45, Ex. A, p. 2). To the contrary, the unrebutted declaration submitted by Grube establishes that he did not personally negotiate the Master Lease, did not travel to Illinois to conduct business related to the transactions at issue, does not regularly visit Illinois, and owns no property in Illinois. (Doc. 45, Ex. A, ¶¶ 14–17). On this record, Plaintiffs have failed to demonstrate a basis for believing that jurisdictional discovery would uncover facts sufficient to establish personal jurisdiction. With respect to specific jurisdiction, there is no basis in the record to suspect that discovery would identify any other relevant contacts between Grube and Illinois. Regarding the allegations in Counts II and V, even assuming Grube personally participated in the alleged misrepresentations, Plaintiffs have not alleged facts demonstrating that he purposefully availed himself of Illinois or expressly aimed tortious conduct at Illinois sufficient to satisfy due process. There is also no basis to support a finding of general jurisdiction. Plaintiffs likewise fail to identify what jurisdictional discovery they seek or explain how such discovery would establish personal jurisdiction over Grube. *See John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, No. 16 C 5918, 2017 WL 1093150, at *13 (N.D. Ill. Mar. 23, 2017) (rejecting a one-sentence request for discovery where the plaintiff failed to identify the discovery sought, explain why it was necessary, or

demonstrate how it would support personal jurisdiction). Accordingly, the Court denies Plaintiffs' request for jurisdictional discovery.

## II. Fraudulent Misrepresentation (Count II)

Defendants argue that Plaintiffs fail to state a claim for fraudulent misrepresentation in Count II of the First Amended Complaint. Specifically, Defendants contend that Plaintiffs fail to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), fail to plausibly allege that Plaintiffs justifiably relied on the alleged misrepresentation, and fail to identify an actionable false statement of material fact. (Doc. 45, pp. 9–15). Plaintiffs respond that the First Amended Complaint identifies the alleged misrepresentation, the parties who made it, and the document in which it appears, and that whether Plaintiffs' reliance was justified presents a question of fact not appropriately resolved on a motion to dismiss. (Doc. 48, pp. 7–11).

Under Illinois common law, a fraudulent misrepresentation claim requires "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Board Of Educ. Of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989). A complaint alleging fraudulent misrepresentation must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). This requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

Defendants contend that Plaintiffs impermissibly lump Steel on Steel, Rochester, and Grube together without identifying which Defendant made the alleged misrepresentation. Although Plaintiffs' allegations could more clearly distinguish the role of each Defendant, the Court concludes that dismissal under Rule 9(b) is not warranted. The First Amended Complaint identifies a single allegedly fraudulent representation, the date on which it was made, and the document in which it appears—the Assignment and Assumption Agreement attached to the Complaint. (Doc. 38, Ex. D). The Agreement itself reflects that Steel on Steel and Rochester were parties to the transaction and that Grube executed the Agreement on behalf of both entities. Under these circumstances, the Complaint adequately identifies the transaction and conduct forming the basis of the alleged fraud and provides Defendants with sufficient notice of the claim against them. This case is therefore distinguishable from the case relied upon by Defendants, where the plaintiffs alleged that one or more defendants made unspecified misrepresentations without identifying who made them or the circumstances under which they were made. *See Westchester Fire Ins. Co. v. Rock Island Hous. Auth.*, No. 4:16-CV-4060-SLD-JEH, 2017 WL 3090291, at *2 (C.D. Ill. Feb 8, 2017). Likewise, the Seventh Circuit has cautioned against "hedging" allegations that attribute fraudulent conduct to one defendant "and/or" another, thereby leaving open multiple possible theories of liability. *See Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 949 (7th Cir. 2013). Plaintiffs have not alleged alternative or uncertain representations of that nature here. Rather, they identify a single written representation contained in a specific

agreement executed by the parties to the transaction. (Doc. 38, ¶ 24). Accordingly, the Court declines to dismiss Count II on Rule 9(b) grounds.

Even assuming Plaintiffs have adequately alleged a false statement of material fact, Count II nevertheless fails because Plaintiffs have not plausibly alleged justifiable reliance. Under Illinois law, a plaintiff asserting fraudulent misrepresentation must establish that its reliance on the alleged misrepresentation was reasonable in light of the facts known to it or readily discoverable through the exercise of ordinary prudence. *See Siegel Dev., LLC v. Peak Constr. LLC*, 993 N.E.2d 1041, 1060 (Ill. App. Ct. 2013). Although justifiable reliance is ordinarily a question of fact, dismissal is appropriate where the allegations of the complaint establish that no reasonable trier of fact could conclude the plaintiff's reliance was justified. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Illinois courts have consistently recognized that a plaintiff cannot establish justifiable reliance where the alleged misrepresentation concerns facts equally available to both parties or readily ascertainable through the plaintiff's own exercise of ordinary prudence. *See Cozzi*, 250 F.3d at 574; *Johnson v. Waterfront Servs. Co.*, 909 N.E.2d 342, 350 (Ill. App. Ct. 2009) ("The question of justifiable reliance takes into account both what the plaintiff knew and what he could have learned through the exercise of ordinary prudence."); *D.S.A. Fin. Corp. v. Cnty. of Cook*, 801 N.E.2d 1075, 1081 (Ill. App. Ct. 2003) (showing that parties may not have their eyes closed to available information and then act as though they have been deceived by another). Here, Plaintiffs allege that, prior to executing the Assignment and Assumption Agreement, they requested Steel on Steel's audited financial statements and other financial

information pursuant to the Master Lease, but Steel on Steel failed to provide those materials. (Doc. 38, ¶¶ 23–27). Plaintiffs therefore knew, or, at the very least, could have readily determined, whether Steel on Steel had complied with that obligation under the Master Lease. Because the factual predicate underlying the alleged misrepresentation was equally available to Plaintiffs through their own records and dealings with Steel on Steel, Plaintiffs cannot plausibly allege that they reasonably relied on Steel on Steel's subsequent representation that it was "not in default" under the Master Lease. Accordingly, Plaintiffs have failed to plausibly allege the element of justifiable reliance, and therefore Count II must be dismissed.

**III. Negligent Misrepresentation / Fraudulent Concealment (Count V)**

Finally, Defendants argue that Count V fails to state a claim because Plaintiffs have not adequately alleged fraudulent concealment. Specifically, Defendants contend that Plaintiffs fail to plead the claim with particularity, fail to allege a duty requiring Defendants to disclose the allegedly concealed information, and fail to identify any actionable concealed material fact. (Doc. 45, pp. 15–20). Plaintiffs respond that Defendants misconstrue Count V, arguing that Count V alleges negligent concealment or negligent misrepresentation rather than fraudulent concealment, and therefore is not subject to Rule 9(b)'s heightened pleading standard. (Doc. 48, pp. 11–14).

The Court need not resolve whether Count V is properly characterized as a claim for fraudulent concealment or negligent misrepresentation because Plaintiffs fail to state a claim under either theory. To state a claim for fraudulent concealment under Illinois law, a plaintiff must allege, among other things, that the defendant

concealed a material fact that it was under a duty to disclose. *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty*., 897 F.3d 797, 805 (7th Cir. 2018). The duty to disclose arises only in certain situations, including where the "plaintiff and defendant are in a fiduciary or confidential relationship" and "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. *Id.* (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)). Likewise, a negligent misrepresentation claim requires "a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co*., 843 N.E.2d 327, 335 (Ill. 2006). Moreover, where, as here, a plaintiff seeks recovery for purely economic loss, Illinois imposes such a duty "only if the party is in the business of supplying information for the guidance of others in their business transactions." *Id.* Because Count V fails to plausibly allege the existence of any such duty, it cannot proceed regardless of the theory under which Plaintiffs seek to characterize it.

Plaintiffs have failed to plausibly allege the existence of any duty giving rise to liability under Count V. To the extent Plaintiffs seek to proceed under a negligent misrepresentation theory, Illinois law is clear that, where a plaintiff seeks recovery for purely economic loss, a defendant owes "a duty to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank,* 843 N.E.2d at 335. Plaintiffs allege no facts suggesting that Steel on Steel, Rochester, or Grube were in the business of supplying information for the guidance of others in their business transactions. Rather, the First Amended Complaint alleges that Defendants

were parties to a commercial railcar lease and subsequent assignment agreement. (Doc. 38, ¶¶ 5–18). That Defendants made representations concerning their own contractual obligations in connection with that commercial transaction does not transform them into information suppliers within the meaning of *First Midwest Bank*. Accordingly, Plaintiffs have failed to allege the existence of a duty necessary to sustain a negligent misrepresentation claim.

Nor have Plaintiffs plausibly alleged the type of relationship necessary to impose a duty to disclose under a fraudulent concealment theory. Illinois recognizes such a duty only where the parties stand in a fiduciary or confidential relationship or where "the defendant is placed in a position of influence and superiority as a result of the plaintiff's trust and confidence." *Moore v. Pendavinji*, 260 N.E.3d 111, 120–21 (Ill. App. Ct. 2024). Plaintiffs allege no such relationship here. The First Amended Complaint alleges nothing more than an arm's-length commercial leasing transaction between sophisticated business entities. *See State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 947 (Ill. App. Ct. 1994) ("The mere fact that business transactions occurred or that a contractual relationship existed is insufficient to support" a fiduciary relationship.). Plaintiffs argue that Defendants possessed superior knowledge because Grube controlled both Steel on Steel and Rochester and therefore knew information concerning those entities' financial condition that Plaintiffs did not. (Doc. 48, pp. 12–13). But the relevant inquiry is not whether Defendants possessed information unavailable to Plaintiffs; it is whether Defendants occupied a position of influence or superiority because of Plaintiffs' trust and confidence. Plaintiffs allege no facts suggesting they reposed such trust in Defendants

or that Defendants exercised any corresponding influence over Plaintiffs' decision-making. Rather, the Complaint describes an ordinary commercial transaction in which each party acted in its own economic interest. Under those circumstances, Defendants' superior knowledge of their own financial affairs does not give rise to a legal duty to disclose under Illinois law.

Accordingly, because Plaintiffs have failed to plausibly allege the existence of a legal duty to disclose or communicate the allegedly omitted information, Count V fails to state a claim upon which relief may be granted. Count V is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Steel on Steel Railways, LLC, Rochester Iron & Metal, Inc., and Jason W. Grube's Motion to Dismiss (Doc. 44) is **GRANTED**. Defendant Jason W. Grube is **TERMINATED** from this action pursuant to Federal Rule of Civil Procedure 12(b)(2). Counts II and V of Plaintiffs' First Amended Complaint are **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6). Because all claims against Defendant Steel on Steel Railways, LLC, are dismissed, Steel on Steel is **TERMINATED** from this action. Count I remains pending against Defendant Rochester Iron & Metal, Inc.

**IT IS SO ORDERED.**

**DATED: September 2, 2026**

**STEPHEN P. McGLYNN**
**U.S. District Judge**